UNGERER & CO. (INC.) *v.* UNITED STATES (No. 2541) [1]

"RESINAROMES" — PERFUME MATERIALS — AROMATIC RESINS — PRESUMPTION FAVORS COLLECTOR'S CLASSIFICATION.

Gummy, resinous substances obtained by first dissolving and then evaporating orris root and oak moss, known by the registered trademark "resinaromes," known chemically, and to some extent commercially, as resinoids, oleo resins, or isolaromes, used as perfumery material, are not classifiable under the second clause of paragraph 61, Tariff Act of 1922—"anethol, citral * * * and all natural or synthetic odoriferous or aromatic chemicals" because they are not chemicals in the sense that they are capable of being expressed by definite chemical formulas or symbols. They are classifiable under the third clause of this paragraph, as mixtures or combinations containing natural odoriferous or aromatic substances. They are not classifiable under paragraph 1584, within the provision for "other gums, gum resins, and resins," because that provision includes only such as are not specially provided for and because they are used as perfume material; under paragraph 59, as oils, distilled or essential; or under paragraph 1459, as nonenumerated manufactures. Having been assessed under the second clause of paragraph 61, and being shown to be classifiable under the third, the judgment of the board, overruling the importers' protest, is affirmed.

United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, G. A. 8920 (T. D. 40627)

[Affirmed.]

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellants.
*William W. Hoppin* and *Charles D. Lawrence,* Assistant Attorneys General, for the United States.

[Oral argument October 28, 1925, by Mr. Puckhafer and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is produced in substantially the following manner: Orris root is powdered and subjected to the action of a solvent such as petroleum, ether, alcohol, or other solvent.

---

[1] T. D. 41425.

The solvent is then distilled off, leaving a residuum which is a thick, gummy, resinous mass. This mass is imported under the name of "resinarome orris." Oak moss is subjected to the same or similar treatment with substantially the same results, the residuum, however, being known as "resinarome oak moss." Both are commonly referred to as "resinaromes," a registered trademark over which importers claim to have exclusive control.

While it is agreed that the above processes are, in substance, employed to produce these resinaromes, the record shows that the precise treatment is a trade secret which witnesses declined to disclose, but that the results are as before stated is not controverted.

In their imported condition, these resinaromes contain from 2.50 to 5.50 per centum of alcohol. One witness testified that the alcohol content was isopropyl alcohol; others referred to it as alcohol without further designation. They also contain, according to the testimony, a considerable amount of glucosides which are defined by a witness "as being complex organic compounds that break up on hydrolysis to form glucose." Glucosides, it seems, from the evidence, are components of plants; that is, vegetable matter. The percentage of resin that is in the importations does not appear, a witness for importer testifying that it was impossible to state the percentage; that the term resin does not mean a pure substance; that it means a mixture; that it contains a great many different ingredients, very few of which have been isolated, but he said that there was a substantial amount of resin in both the resinaromes as imported.

It is agreed, and the board found, that both are perfumery materials; that they are used in the manufacture of perfumery for their odor values as well as for their fixative values.

They were classified by the collector under paragraph 61 of the Tariff Act of 1922 and assessed for duty under the second provision thereof at 45 per centum ad valorem. The paragraph reads as follows:

Perfume materials: Ambergris, castoreum, civet, and musk grained or in pods, 20 per centum ad valorem; anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, terpineol, vanillin, and all natural or synthetic odoriferous or aromatic chemicals, all the foregoing not mixed and not compounded, and not specially provided for, 45 per centum ad valorem; all mixtures or combinations containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances, 40 cents per pound and 50 per centum ad valorem: *Provided,* That only materials not marketable as perfumery, cosmetics, or toilet preparations, and not containing more than 10 per centum of alcohol, shall be classified for duty under this paragraph: *Provided further,* That all of the foregoing materials containing more than 10 per centum of alcohol shall be classified for duty under paragraph 62 as toilet preparations.

The importers contend that the merchandise should have been classified and given free entry under the provision for other gum

resins, and resins not specially provided for in paragraph 1584 of the act, which we quote:

Gums and resins: Damar, kauri, copal, dragon's blood, kadaya, sandarac, tragacanth, tragasol, and other gums, gum resins, and resins not specially provided for.

Importers further claim that if not so classifiable the merchandise should be classified and held dutiable as a nonenumerated article, manufactured in whole or in part, at 20 per centum ad valorem under paragraph 1459, which it is unnecessary to quote.

Claim was also made for classification under paragraph 59 of the act providing for oils, distilled or essential, etc., which it is unnecessary, in view of the conclusions hereinafter reached, to further refer to.

It will be noticed that paragraph 61 provides for three rates of duty on perfume materials, and that the merchandise here was classified and assessed under the second provision.

The Government contends that the merchandise is dutiable as assessed, that neither of the importers' claims is well founded, and further urges that, if not dutiable as assessed, it, nevertheless, falls within the third provision of paragraph 61 as a mixture or combination containing natural odoriferous or aromatic substances.

The importers argue that it was the intent and purpose of Congress in the act of 1922 to permit American manufacturers of perfumery to obtain the natural, odoriferous, or aromatic substances produced by some form of solvent extraction from flowers or other parts of plants, free of duty, and point to paragraphs 1571 and 1631 of the act as supporting this claim. They do not contend that the resinaromes are within those paragraphs, but argue that inasmuch as they are of vegetable origin, although resinous, the only way the privilege of free entry can be accorded thereto, and thus give effect to the claimed congressional intent, is to classify them under paragraph 1584.

While there is force in these suggestions, it remains to be determined whether or not these resinaromes are gum resins or resins not specially provided for in paragraph 1584, and the burden is upon importers to establish that they are entitled to that classification.

A large amount of testimony from numerous witnesses was received by the board. Some were positive that these resinaromes were, in fact, and were known in the trade as fluid resins, and were not aromatic chemicals; others were equally positive that they were not resins, or that there was no such term as fluid resins properly applicable thereto, and that they were aromatic chemicals.

It appears without contradiction that these resinaromes are known to chemists under the names of resinoids, oleoresins, isolaromes, and perhaps by other names, and to some extent, at least, are so denominated in the trade.

The general tenor of the testimony of witnesses introduced by the importers was to the effect that, whatever might be .the particular name applied thereto, they were within the term "fluid resins," from which, it is argued, they are within the provisions of paragraph 1584.

The Board of General Appraisers found that they were odoriferous or aromatic chemicals.

But the importers argue that there is no evidence to support this finding and points out in this connection that the articles named in the second provision of paragraph 61, such as anethol, citral, etc., are true chemicals; that is, that they are capable of being expressed by definite symbols used in chemistry (which the Government admits), from which it is argued that, applying the doctrine of *ejusdem generis*, these resinaromes are not included in that part of the paragraph because it is established by the evidence that they are not capable of being expressed by chemical symbols.

The determination of that claim must settle the question as to whether or not they are dutiable under the second provision of the paragraph. Based upon the language of that provision and the testimony of record, we are of opinion that these resinaromes are not classifiable thereunder because they are not chemicals in the sense that they are capable of being expressed by a definite chemical formula or symbol. The arrangement of the paragraph as a whole, the fact that progressive duty rates are provided for, the limitation of the second provision to "natural or synthetic odoriferous or aromatic chemicals," followed by the broader third provision for "all mixtures or combinations," etc., lead us to that conclusion, and we think, as matter of law, that these resinaromes are excluded from said second provision.

But the part of paragraph 1584 relied upon by importers provides for other gum resins and resins not specially provided for which it is claimed covers these resinaromes. To so classify them, however, it must appear that, although they are a resinous substance and may be a kind of resin, they are not otherwise specially provided for.

Paragraph 61 provides for perfume materials. The third provision therein is for such materials as mixtures or combinations containing natural odoriferous or aromatic substances. The testimony shows that these resinaromes contain alcohol and other ingredients as well as natural odoriferous or aromatic substances derived from natural products, and they are, therefore, mixtures or combinations containing such substances. The provision for perfume materials, of course, implies that merchandise classifiable thereunder must be used in making perfumes. Use is often an important factor in determining classification and is applicable here. These resinaromes are con-

cededly used for no other purpose than the manufacture of perfumes and are, therefore, covered by the third provision in paragraph 61 as mixtures or combinations containing natural odoriferous or aromatic substances, regardless as to whether or not they would otherwise fall within paragraph 1584 as a kind of resin.    This conclusion makes it unnecessary to discuss the other claims of importers.

We conclude that importers have established that the merchandise was not properly classifiable under the second provision of paragraph 61 but have failed to show that it is classifiable under any of the paragraphs claimed by them.

Under such circumstances, we affirm the judgment of the Board of General Appraisers without approving the classification of the merchandise.

*Affirmed.*